# IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

CHARLENE BAKER,                                 &ast;
personal representative for the estate of       &ast;
DORIS FRANCES BAKER                             &ast;
6516 DOGWOOD ROAD                               &ast;
GWYNN OAK, MD 21207                             &ast;
                                                &ast;
And                                             &ast;
                                                &ast;
WILLIAM KEVIN FLANIGAN                          &ast;
AND LESLIE FLANIGAN                             &ast;
13742 BRIGHTON DAM ROAD                         &ast;
CLARKSVILLE, MD 21029                           &ast;
                                                &ast;
On their own Behalf and on Behalf of All Other  &ast;
Consumers Similarly Situated                    &ast;
                                                &ast;
       Plaintiffs,                   &ast;
                                                &ast;
vs.                                             &ast;   Case No. _____
                                                &ast;
ANTWERPEN MOTORCARS LTD.                        &ast;
6440 Baltimore National Pike                    &ast;
Baltimore, Maryland 21228                       &ast;
     SERVE ON:                                 &ast;
       Stanford D. Hess, Esquire           &ast;
       6440 Baltimore National Pike        &ast;
       Baltimore, Maryland 21228           &ast;
                                                &ast;
ANTBREN LLC                                     &ast;
6440 Baltimore National Pike                    &ast;
Baltimore, Maryland 21228                       &ast;
     SERVE ON:                                 &ast;
       Stanford D. Hess, Esquire           &ast;
       6440 Baltimore National Pike        &ast;
       Baltimore, Maryland 21236           &ast;
                                                &ast;
ANTRAND, INC.                                   &ast;
6440 Baltimore National Pike                    &ast;
Baltimore, Maryland 21228                       &ast;
     SERVE ON:                                 &ast;
       Stanford D. Hess, Esquire           &ast;
       6440 Baltimore National Pike        &ast;
       Baltimore, Maryland 21228           &ast;

RECEIVED AND FILED

2010 JUL 16  PM 3: 25

CLERK OF THE CIRCUIT COURT
BALTIMORE COUNTY

```
                                                    *
ANTWERPEN CHEVROLET LTD.                            *
6440 Baltimore National Pike                        *
Baltimore, Maryland 21228                           *
        SERVE ON:                                   *
        Stanford D. Hess, Esquire                   *
        6440 Baltimore National Pike                *
        Baltimore, Maryland 21228                   *
                                                    *
ANTWERPEN-HK, INC.                                  *
6440 Baltimore National Pike                        *
Baltimore, Maryland 21228                           *
        SERVE ON:                                   *
        Stanford D. Hess, Esquire                   *
        6440 Baltimore National Pike                *
        Baltimore, Maryland 21228                   *
                                                    *
ANTWERPEN HYUNDAI, INC.                             *
6440 Baltimore National Pike                        *
Baltimore, Maryland 21228 - 3903                    *
        SERVE ON:                                   *
        Stanford D. Hess, Esquire                   *
        6440 Baltimore National Pike                *
        Baltimore, Maryland 21228                   *
                                                    *
ANTWERPEN NISSAN, INC.                              *
6440 Baltimore National Pike                        *
Baltimore, Maryland 21228                           *
        SERVE ON:                                   *
        Stanford D. Hess                            *
        6440 Baltimore National Pike                *
        Baltimore, Maryland 21228                   *
                                                    *
ANTWERPEN ON THE WYE, LLC                           *
6440 Baltimore National Pike                        *
Baltimore, Maryland 21228                           *
        SERVE ON:                                   *
        Stanford D. Hess                            *
        6440 Baltimore National Pike                *
        Baltimore, Maryland 21228                   *
                                                    *
ANTWERPEN VOLKSWAGEN, INC.                          *
6440 Baltimore National Pike                        *
Baltimore, Maryland 21228                           *
        SERVE ON:                                   *
        Stanford D. Hess                            *
```

```
        6440 Baltimore National Pike          *
        Baltimore, Maryland 21228             *
                                              *
J.A. MOTORCARS, INC.                          *
6440 Baltimore National Pike                  *
Baltimore, Maryland 21228                     *
        SERVE ON:                             *
        Stanford D. Hess                      *
        6440 Baltimore National Pike          *
        Baltimore, Maryland 21228             *
                                              *
        Defendants.                           *
                                              *
*      *      *      *      *      *      *    *    *    *    *    *    *
```

## CLASS ACTION COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiffs Charlene Baker as personal representative of the estate of Doris Frances Baker, and William and Leslie Flanigan ("named Plaintiffs"), on their own behalf and on behalf of all others similarly situated, by and through attorneys Richard S. Gordon and Benjamin H. Carney of Quinn, Gordon & Wolf, Chtd., and Mark H. Steinbach of O'Toole, Rothwell, Nassau & Steinbach allege and state as follows:

## I.    INTRODUCTION

1.    This is a Complaint against Antwerpen Motorcars LTD., Antbren LLC, Antrand, Inc., Antwerpen Chevrolet LTD., Antwerpen-HK, Inc., Antwerpen Hyundai, Inc., Antwerpen Nissan, Inc., Antwerpen On The Wye, LLC, Antwerpen Volkswagen, Inc., and J.A. Motorcars, Inc. (hereinafter collectively "Antwerpen Automotive Group"), for violating and conspiring together to systematically violate statutory and common law obligations governing motor vehicle sales that provide significant safeguards to consumers purchasing used vehicles.

2.    In Maryland, when a dealer sells a vehicle that was previously used for some purpose other than as a consumer good, it must disclose the former use clearly and conspicuously to its prospective customer. COMAR 11.12.01.14M(1). One of the commercial uses for which

3

disclosure is specifically required relates to vehicles which have been used as short-term rentals. COMAR 11.12.01.14M(1)(f).

3.    Named Plaintiffs and the Class are persons who purchased a used motor vehicle from one of the Defendants' dealerships in Maryland that was previously used for a non-consumer purpose, but were not provided notice of such use as required under Maryland law – that is, the used motor vehicle was previously used as a short-term rental. As the General Assembly recognized, many car buyers seek to avoid vehicles used for short-term rentals because of the perception these vehicles are often driven hard by drivers who care little about them, may not have been well maintained and are more often involved in accidents than vehicles used for personal, family, and household purposes.

4.    The Defendants failed to disclose and intentionally concealed from Named Plaintiffs and the Class the material fact that the vehicles sold to them were previously used as short-term rentals. In so doing, Defendants violated a clear and explicit disclosure requirement governing motor vehicle sales in Maryland. This suit seeks to end Defendants' illegal sales practices and to obtain compensation for the losses sustained by Named Plaintiffs and members of the Class.

5.    In fact, the Defendants – which are informally associated together as "Antwerpen Automotive Group," a non-incorporated and informal group – conspired among themselves, by agreement and understanding, to engage in the unlawful acts described herein which resulted in legal damages to the Named Plaintiffs and the Class.

6.    The Defendants associated together under the non-incorporated "Antwerpen Automotive Group" umbrella in order to advertise and market as one entity, and agreed to develop and use form documents used by each of the Defendants in the course of vehicle sales.

In addition, the Defendants associated together to present themselves to their customers and the world as one entity.  The Defendants are all marketed through a common website, and the Defendants deliberately use the moniker "Antwerpen Automotive Group" as a way of branding the dealerships and making them appear as part of a large umbrella entity and one which enjoys "family" ownership characteristics – although the members of the Antwerpen Automotive Group association are separately incorporated.  This association is marketed as part of a large, legitimate enterprise which would certainly abide by Maryland law.

7.      Through their association, however, the Defendants developed and agreed upon the uniform and systematic scheme described herein to acquire and sell prior daily rental vehicles to consumers without the disclosures required under Maryland law, with misleading and fraudulent omissions and representations concerning the history of these vehicles, and with the specific intent to deceive and defraud the Named Plaintiffs and members of the Class.  As a result of this scheme and conspiracy, the Named Plaintiffs and the members of the Class were damaged.

8.      The Defendant Antwerpen Automotive Group entities purchase a large number of used vehicles that were previously used as short-term rentals.  On information and belief, Defendants collectively negotiate favorable purchase agreements with multiple rental car companies. Defendants also purchase a large number of rental vehicles from dealer auctions and the general public and systematically place these vehicles on the used car lots of Antwerpen Automotive Group entities along side of other similar used vehicles that were not used as short-term rentals. At the time of the purchases of Named Plaintiffs and the Class, Defendants took no steps to differentiate one car (the prior short-term rental) from the next (vehicle previously used only for personal use) for its customers.

9.     Because prior short-term rental vehicles are harder to sell and consistently result in a lower selling price, the Defendant Antwerpen Automotive Group entities also conceal the vehicle's prior use as a short-term rental at the point of purchase by uniformly and consistently failing to present the consumer with a clear and conspicuous written disclosure of the vehicle's rental history on the sale agreement as required under Maryland law.  Defendants' affirmative acts and concealments clearly violate federal law, Maryland's motor vehicle laws and other consumer protection laws.

10.     Indeed, Antwerpen Automotive Group was well aware of its illegal activities in selling prior daily rental vehicles without disclosure – and of the fact that such acts were illegal – at the time it sold prior daily rentals to Named Plaintiffs and the Class.  Antwerpen Automotive Group entities have been sued for engaging in the same kind of practices described in this Complaint before.   Upon information and belief, such previous lawsuits alleging that the Antwerpen Automotive Group entities regularly engaged in fraudulent and systematic sales of prior daily rentals without disclosures required by Maryland law was brought to the attention of executives at the various Antwerpen Automotive Group entities – but the Defendants have nevertheless persisted in selling prior daily rental vehicles without required disclosures.  Although Antwerpen Automotive Group resolved those prior cases after investigation into their allegations, it and the other Defendants, after express notice of their violations, continued in their illegal activities.

11.     Defendants' clear violations of Maryland and federal law, and their conspiracy to commit those violations, have enriched them unjustly at the expense of hundreds and potentially thousands of Maryland consumers, a practice this suit seeks to end.  The Defendant Antwerpen Automotive Group entities' use of form vehicle sales agreements and other form documents to

conceal the prior rental history of the vehicles sold to Named Plaintiffs and the other members of the Class, as well as their uniform non-disclosures and uniform affirmative misrepresentations on those forms, make this case particularly suitable for resolution through a class action lawsuit.

12.    The Defendant Antwerpen Automotive Group entities are jointly owned, share management personnel and hold themselves out to the general public under the name Antwerpen Automotive Group.   The Defendant Antwerpen Automotive Group entities named in this consumer class action acted in concert to pull off, and jointly benefitted from, this scheme.

## II.    PARTIES

13.    Named Plaintiff Charlene Baker, personal representative for the estate of Doris Frances Baker, is a resident of Baltimore County, Maryland.   On February 3, 2007, Doris Frances Baker purchased a used 2005 Ford Focus from Antwerpen Nissan, which unbeknownst to her at the time of sale, had been previously used for purposes other than as a consumer good. Defendants never disclosed to Doris Frances Baker that the vehicle she purchased was previously used for a purpose other than as a consumer good or specifically, that it had been used for short-term rentals. Doris Frances Baker passed away on November 9, 2009.

14.    Named Plaintiffs William Kevin Flanigan and Leslie Flanigan are residents of Howard County, Maryland.   On April 13, 2007, William Kevin Flanigan and Leslie Flanigan purchased a used 2005 Toyota Avalon from Antwerpen Toyota, which unbeknownst to them at the time of sale, had been previously used for purposes other than as a consumer good and as a short term rental vehicle.  Defendants never disclosed to William Kevin Flanigan and Leslie Flanigan that the vehicle they purchased was previously used for a purpose other than as a consumer good or specifically, that it had been used for short-term rentals.

15.    Defendant Antwerpen Motorcars LTD. is a Maryland entity whose principal place

of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland including Baltimore County. Antwerpen Motorcars LTD. is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

16.     Defendant Antbren LLC, is a Maryland entity whose principal place of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships located in the state of Maryland including Baltimore County. Antbren LLC, is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

17.     Defendant Antrand, Inc., is a Maryland corporation whose principal place of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228. Antrand, Inc., on information and belief, is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland including Baltimore County. Antrand, Inc. is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

18.     Defendant Antwerpen Chevrolet LTD. is a Maryland entity whose principal place of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland including Baltimore County. Antwerpen Chevrolet LTD. is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

19.     Defendant Antwerpen-HK, Inc. is a Maryland entity whose principal place of

business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland including Baltimore County. Antwerpen-HK, Inc. is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

20.     Defendant Antwerpen Nissan, Inc. is a Maryland entity whose principal place of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland including Baltimore County. Antwerpen Nissan Inc. is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

21.     Defendant Antwerpen On The Wye, LLC is a Maryland entity whose principal place of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland. Antwerpen On The Wye, LLC is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

22.     Defendant Antwerpen Volkswagen, Inc. is a Maryland entity whose principal place of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships located in the state of Maryland including Baltimore County. Antwerpen Volkswagen, Inc., is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

23.     Defendant J.A. Motorcars, Inc., is a Maryland corporation whose principal place

9

of business is located at 6440 Baltimore National Pike, Baltimore, Maryland 21228 and on information and belief, is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland including Baltimore County. J.A. Motorcars, Inc., is primarily engaged in selling new vehicles and late model low mileage used vehicles to consumers.

## III.   JURISDICTION AND VENUE

24.   Subject matter jurisdiction is proper under MD. CODE ANN., CTS. & JUD. PROC. § 1-501 (2006), and this Court has personal jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. §6-102(a), as the Defendants are domiciled in Maryland, organized under the laws of Maryland, maintain their principal places of business in Maryland, and will be served with process in Maryland.

25.   Venue is proper under MD. CODE ANN., CTS. & JUD. PROC. § 6-201(a)(2006) because Defendants carry out regular and substantial business in Baltimore County, and regularly solicit business from residents of Baltimore County.

## IV.   FACTS APPLICABLE TO ALL COUNTS

26.   This is an action against the Defendant entities associating in fact to form Antwerpen Automotive Group, resulting from their uniform and consistent failure to disclose that hundreds, if not thousands of vehicles sold to consumers were prior short-term rentals, and their conspiracy to conceal and not disclose the prior rental history of those vehicles.

27.   Antwerpen Automotive Group acquires its inventory of used motor vehicles from a variety of sources including direct purchases from consumers, auto auctions, and sales from manufacturers and car rental companies.

28.   At the time a vehicle is purchased for resale on one of its lots located in the State

of Maryland, Defendants know, and have information available to them, that identifies the prior use of the vehicle for short-term rentals.

29.     In accordance with the disclosure provisions of COMAR 11.12.01.14(M)(1), motor vehicle dealers in Maryland must disclose to a prospective purchaser a vehicle's prior use for any purpose other than as a consumer good "clearly and conspicuously" in writing and at a minimum, it must appear as a separate notation on the vehicle sales contract. This disclosure on the sales contract must specifically indicate, clearly and conspicuously, that the vehicle was previously used as a "short-term rental vehicle."

30.     COMAR 11.12.01.14(M)(emphasis added) provides that:

(1)     **Vehicles formerly used for a purpose other than a consumer good shall be clearly and conspicuously identified as to their former use. This includes, but is not limited to, vehicles formerly used:**

(a)     For public or governmental purposes and normally driven by multiple drivers;
(b)     As executive driven vehicles;
(c)     As demonstrators;
(d)     For driver training;
(e)     As taxicabs; or
**(f)     As short-term rental vehicles.**

(2)     The word "commercial", or similar ambiguous terms, may not be used to describe these vehicles.

31.     Maryland dealers, therefore, must routinely and clearly and conspicuously disclose when the vehicles they offer for sale have been used as short-term rental vehicles, as required by COMAR 11.12.01.14(M)(1).

32.     Antwerpen Automotive Group, however, does not. At all times relevant to this Complaint, it has been the standard practice and conspiracy across all of the Defendants to conceal or otherwise fail to disclose to customers a vehicle's prior use as a short-term rental on the vehicle sales contract or elsewhere.

33.     In Maryland, it has long been industry custom and practice, as required by the Maryland Motor Vehicle Administration ("MVA"), to make the required disclosure concerning short-term rentals on the vehicle sales contract or Buyer's Order. *See* Exhibit A, Bulletin D-12-89-06 (February 1, 1990), pp. 2 – 3 ("It must clearly be designated as a previously used short term rental vehicle on the sales agreement.")

34.     Defendants, however, do not disclose prior short-term rental use on their sales agreements as required by the MVA.   Not one member of the Class in this case has any disclosure of their vehicle's prior use for short-term rentals on the sales contract as required in Maryland.

35.     Defendants are well aware of their duty to clearly and conspicuously disclose to retail buyers on the sales agreement when their vehicles have previously been used for short-term rentals or other non-consumer use.   Nevertheless, Defendants did not give any indication on the sales agreements of Named Plaintiffs or other members of the Class of the vehicle's prior history, thus concealing material facts related to the transaction. In all cases, the result was the same – Defendants managed to systematically and routinely sell a prior daily rental vehicle without disclosing that history to the buyer. Neither the Named Plaintiffs nor any other members of the Class received a disclosure of the prior rental use of their vehicles on their vehicle sales agreements.

36.     As part of its scheme to mislead customers into believing that cars used for prior short-term rentals were never put to such use, Antwerpen Automotive Group also employs a form entitled "Prior Use Acknowledgment."  This form, which is provided to car buyers only after they have signed the sales agreement and thus become legally bound to purchase a vehicle, does not provide the "clear and conspicuous" disclosure of prior non-consumer use required by

law on the vehicle sales contract so that the prospective customer has this material information before he or she agrees to purchase the vehicle. Nonetheless, after obtaining the customer's signature on the vehicle sales contract, the Antwerpen Automotive Group provides a form entitled "Prior Use Acknowledgment." On that form are pre-printed a series of boxes that dealerships check to disclose, for example, if a car had previously been used for short-term rentals, as a police car, taxicab or other non-consumer purpose. Antwerpen Automotive Group's provision of this form to its customers reflects its knowledge that disclosure of non-consumer use is required by Maryland law.

37. Nonetheless, Antwerpen Automotive Group systematically and routinely failed to disclose even on a Prior Use Acknowledgment form that the vehicles purchased by Named Plaintiffs and members of the Class had been used as short-term rental vehicles.

38. Antwerpen Automotive Group's failure to disclose prior use as a rental car constitutes an affirmative misrepresentation that the vehicles **were not** used for short-term rentals. Indeed, where Antwerpen Automotive Group utilized Prior Use Acknowledgment forms, they affirmatively and falsely indicated either that the vehicle in question had not been used for short-term rentals and/or that the vehicle had some prior use other than as a short-term rental vehicle.

39. Antwerpen Automotive Group deliberately or negligently failed to make the required disclosures on the sales contract and compounded the wrong by falsely indicating on Prior Use Acknowledgment forms that the vehicles had not been used for short-term rentals.

40. Thus, Defendants uniformly and consistently failed to check or place an "X" or checkmark in the box directly next to "Used as a rental vehicle" in the Prior Use Acknowledgment forms, even when they knew the vehicles it offered for sale were previously

used as short-term rentals. Even if Defendants had accurately disclosed the prior rental history of the vehicles on the Prior Use Acknowledgment forms, however, they still would not have been in compliance with the requirements of Maryland law that the prior rental history be disclosed clearly and conspicuously on the vehicle sales contract.

41.     As part of the scheme to mislead consumers about their vehicles' prior use as short-term rentals, Defendants also uniformly and consistently fail to present titles to its customers or require customers to sign the title. If, as federal law requires, Defendants presented titles to customers for their signature, customers would have an opportunity to see that the vehicle had previously been owned by entities such as Hertz Rental Car or Enterprise Leasing, and this disclosure would have undone the Defendants' scheme and conspiracy to keep this information from its customers.

42.     Defendants' acts and material omissions, as set forth above, deceived or intended to deceive their customers by indicating that the vehicles sold to Named Plaintiffs and the Class were previously only used as consumer goods, when in fact, these vehicles had been used for short-term rentals.

43.     As a result of the Defendants' conspiracy to sell prior daily rentals without disclosures required by Maryland law, and the other acts, material omissions and affirmative misrepresentations, and unfair and deceptive practices described herein, Named Plaintiffs and the Class paid significantly more for the vehicles than they would have paid for comparable vehicles had Defendants properly, and in a legal manner, disclosed the vehicles' prior use as short-term rentals.

V.     **FACTS APPLICABLE TO NAMED PLAINTIFFS**

44.     On or about February 3, 2007, Doris Frances Baker purchased a used 2005 Ford

Focus, VIN# 1FAFP34N45W108760, from Antwerpen Nissan primarily for personal, family and household use. A copy of Doris Baker's Buyer's Order for the vehicle is attached hereto as **Exhibit B**.

45.     Unbeknownst to Doris Baker on the date of sale, the car had previously been titled in the name of Enterprise Leasing Company of Baltimore and had been previously used for short-term rentals. Defendants had actual knowledge of this information but did not disclose and intentionally and with actual malice concealed and conspired to conceal this information from named Plaintiff.

46.     On or about April 13, 2007, named Plaintiffs William Kevin Flanigan and Leslie Flanigan purchased a used 2005 Toyota Avalon, VIN# 4T1BK36B95U019980, from Defendant Antwerpen Toyota primarily for personal, family and household use. A copy of William and Leslie Flanigan's Buyer's Order is attached hereto as **Exhibit C**.

47.     Unbeknownst to the Flanigans on the date of sale, the car had previously been titled in the name of Hertz Vehicles, LLC and had been previously used for short-term rentals. Defendants had actual knowledge of this information but did not disclose and intentionally and with actual malice concealed and conspired to conceal this information from named Plaintiffs.

48.     Defendants were required to disclose clearly and conspicuously in writing on the sales agreement the fact that Named Plaintiffs' vehicles had previously been used for short-term rentals by Maryland law, and in particular COMAR 11.12.01.14M(1)(a)-(f). Nevertheless, Defendants failed to provide the required clear and conspicuous written disclosure as to the vehicles of Named Plaintiffs and other members of the Class on (i) the vehicle sales agreement, (ii) the "Prior Use Acknowledgment Form" or (iii) or any other document, and conspired together to conceal the prior history of these vehicles.

49.     Unbeknownst to Named Plaintiffs and the other members of the Class on the date of sale, the cars sold to them would not pass without objection in the trade under the contract description, in part, because Maryland law required that the contract describe and disclose clearly and conspicuously the vehicle's prior use as a short-term rental, and the sales agreement contained no indication of the vehicle's prior rental history. Accordingly, those vehicles were unmerchantable under Maryland law.

50.     As a result of Defendants' acts and omissions as set forth in this Complaint, Named Plaintiffs and other members of the Class were misled as to the prior use of the vehicles and their market values, paid more for the vehicles than they were worth, lost the benefit of their bargains, and have sustained other losses and damages.

51.     As part of their regular business practices in Maryland, Defendants systematically and regularly sell, and have conspired to sell, used vehicles that were previously used as short-term rental vehicles without notifying and affirmatively concealing this information from their customers.

52.     Defendants did not obtain the signatures of Named Plaintiffs or other members of the Class on the title certificates for their vehicles as required by federal law in order to further conceal the vehicle's prior use as a short-term rental and its reduced market value.

## VI.   CLASS ACTION ALLEGATIONS

53.     Named Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals pursuant to MD. RULE 2-231. The class consists of:

> All persons between November 12, 2005 and the present, who purchased a used motor vehicle from an Antwerpen dealership in Maryland that was previously used as a short-term rental, but were not provided clear and conspicuous notice of such use on their vehicle sales contract.

16

54.    Excluded from the Class are those individuals who now are or have ever been Antwerpen executives and the spouses, parents, siblings and children of all such individuals.

55.    The Class, as defined above, is identifiable.  Named Plaintiffs are members of the Class.

56.    The Class consists, to Plaintiffs' information and belief, of hundreds and perhaps thousands of individuals, and thus is so numerous that joinder of all of their members is impracticable.

57.    There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual Class members.  The common and predominating questions include, but are not limited to:

a.    Whether Defendants failed to provide clear and conspicuous notice in writing to customers of the vehicles' prior use as short-term rentals;

b.    Whether Defendants affirmatively concealed from their customers the vehicles' prior use as short-term rentals;

c.    Whether Defendants conspired together to conceal and misrepresent in a systematic and uniform way the prior rental history of vehicles sold by their dealerships;

d.    Whether Defendants conspired together to develop and use form documents geared to conceal the prior rental history of vehicles sold by their dealerships;

e.    Whether Defendants are liable to Named Plaintiffs and members of the Class for damages resulting from their pattern of selling vehicles that were previously used as short-term rentals without disclosing this information to their customers;

f.    Whether Defendants had knowledge that the vehicles sold were previously used as short-term rentals or for purposes other than as a consumer good;

g.      Whether declaratory and injunctive relief is proper to prevent Defendants from continuing to sell vehicles that were previously used as short-term rentals without disclosure to prospective customers;

h.      Whether Defendants' failure to disclose the prior short-term rental use of the vehicles they sold was an unfair and deceptive trade practice;

i.      Whether Defendants' affirmative concealment of the prior short-term rental use of the vehicles they sold was an unfair and deceptive trade practice;

j.      Whether Defendants violated the Magnuson-Moss Act;

k.      Whether Defendants' violations of the Magnusson-Moss Act constituted unfair and deceptive trade practices;

l.      Whether Defendants negligently misrepresented the value of vehicles previously used for short-term rentals to their customers;

m.      Whether Defendants negligently failed to disclose the vehicles' prior use for short-term rentals to their customers;

n.      Whether under an implied warranty, a vehicle would pass without objection in the trade under the contract description when Defendants failed to disclose the vehicle's prior use as a short-term rental;

o.      Whether the Defendants engaged in a continuous pattern of racketeering activity;

p.      Whether Antwerpen Automotive Group constitutes a RICO enterprise; and,

q.      Whether the Defendants conspired to engage in the violations of Maryland and federal law described herein.

58.      The claims of the Named Plaintiffs are typical of the claims of the respective members of the Class within the meaning of MD. RULE 2-231(a)(3), and are based on and arise

out of similar facts constituting Defendants' wrongful conduct.

59.     The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of MD. RULE 2-231(b)(1)(A).

60.     Defendants' actions are generally applicable to the Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of MD. RULE 2-231(b)(2).

61.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of MD. RULE 2-231(b)(3). The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Named Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## VII.   CIVIL RICO SUMMARY

62.     In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of Named Plaintiffs and other borrowers.

63.     At all relevant times herein, the "enterprise" described herein, Antwerpen Automotive Group, which is a non-incorporated, informal association in fact formed by the Defendants, operated separately and distinct from each other individual Defendant. Antwerpen Automotive Group was engaged in interstate commerce in that, *inter alia*, the vehicle sales which are the subject of the scheme to defraud set forth in this Complaint, were consummated in

Maryland with vehicles purchased out-of-state in many circumstances, were funded by wire or check that originated or was transmitted to a party located outside of Maryland in many circumstances, and the U.S. Mails and/or wires were utilized in connection with the acquisition, marketing and sale of the vehicles which are the subject of this Complaint in *every* circumstance.

64.     At all relevant times herein, in connection with the activities giving rise to this action, the Defendants conspired with each other to engage in the various activities set forth herein, agreed to participate in the operation of the conspiracy and scheme to defraud Named Plaintiffs and other customers, and aided and abetted one another in these activities, all as proscribed by both Maryland and federal law.

65.     As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on numerous occasions used and caused to be used, mail depositories of the United States Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories.  These mailings included, but were not limited to, the mailing of documents to the finance company assignees of Defendants for each transaction of Named Plaintiffs and members of the Class who financed their vehicles with Defendants.

66.     As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on hundreds of occasions also used and caused to be used, telephone and other wire transmissions including, but not limited to, use of the wires in the electronic titling of the vehicles of Named Plaintiffs and members of the Class, the emailing and faxing and transmission by wire of documents such as loan applications, vehicle sales and financing contracts, and other documents related to the sale

and financing of vehicles by Defendants to potential assignees in the transactions of Named Plaintiffs and other Class members who financed their vehicles with Defendants, with the intent to defraud, and in furtherance of the scheme to defraud.

67.    Also as set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on hundreds of occasions transported, transmitted, and transferred in interstate or foreign commerce goods, wares, merchandise, and money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, in violation of 18 U.S.C. §2314.

68.    For example, upon information and belief, on or about February 27, 2007, Defendants used the wires to title Doris Baker's vehicle through an electronic titling system. In addition, upon information and belief, on or about February 3, 2007, Defendants used the wires to submit a loan application, contract of sale, and other documents related to the sale to Citizens' Automobile Finance, Inc. in Sacramento, California, a potential assignee for the financing account for Doris Baker's vehicle. In addition, upon information and belief, on or about February 3, 2007, Defendants used the wires to advertise the vehicle sold to Doris Baker, without the required disclosure of its prior use as a daily rental vehicle, on the Internet. Upon information and belief, following the sale, Defendants used the U.S. Mails to submit the original documents relating to the financing and sale of Doris Baker's vehicle to its assignee, Citizens' Automobile Finance, Inc. Upon information and belief, Defendants used the Internet and the wires in connection with the identification and purchase of the vehicle eventually sold to Doris Baker. Each such use of the U.S. Mails and wires was in furtherance of the fraudulent scheme described herein.

69.    Upon information and belief, on or about August 21, 2008, Defendants caused

Doris Baker's payment for her vehicle - in the form of a financing contract having a value of more than $5,000 – to be transported in interstate commerce, knowing the same to have been stolen, converted or taken by fraud, to Citizens' Automobile Finance, Inc. in Sacramento, California, and caused Citizens' Automobile Finance to transport in interstate commerce more than $5,000 in payment for the assignment of Doris Baker's financing contract, knowing the same to have been stolen, converted or taken by fraud.

70.     In addition, upon information and belief, on or about April 13, 2007, the Defendants used the wires to title Plaintiff William and Leslie Flanigan's vehicle through an electronic titling system. In addition, upon information and belief, on or about April 13, 2007, Defendants used the wires to submit a loan application, contract of sale, and other documents related to the sale, to Toyota Motor Credit Corp. in Atlanta, Georgia, a potential assignee for the financing account for Plaintiff William and Leslie Flanigan's vehicle. Upon information and belief, on or about April 13, 2007, the Defendants used the wires to advertise the vehicle sold to Plaintiff William and Leslie Flanigan, without the required disclosure of its prior use as a daily rental vehicle, on the Internet. Upon information and belief, Defendants used the Internet and the wires in connection with the identification and purchase of the vehicle eventually sold to Plaintiff William and Leslie Flanigan. Upon information and belief, following the sale, Defendants used the U.S. Mails to submit the original documents relating to the financing and sale of Plaintiff William and Leslie Flanigan's vehicle to its assignee, Toyota Motor Credit Corp. Each such use of the U.S. Mails and wires was in furtherance of the fraudulent scheme described herein.

71.     Upon information and belief, on or about April 13, 2007, Defendants caused Plaintiff William and Leslie Flanigan's payment for their vehicle - in the form of a down-

payment and a financing contract having a value of more than $5,000 – to be transported in interstate commerce, knowing the same to have been stolen, converted or taken by fraud, to Toyota Motor Credit Corp. in Atlanta, Georgia, and caused Toyota Motor Credit Corp. to transport in interstate commerce more than $5,000 in payment for the assignment of Plaintiff William and Leslie Flanigan's financing contract, knowing the same to have been stolen, converted or taken by fraud.

72.     The co-conspirators repeated this pattern – that is, the use of the U.S. mails and/or telephone or wire transmissions in furtherance of their fraudulent scheme, and transporting and causing others to transport money and property with a value exceeding $5,000 in interstate commerce both in furtherance of the fraudulent scheme and knowing the same to have been stolen, converted or taken by fraud – in connection with hundreds or thousands of similar transactions. Each such use of the U.S. mails and/or wires in connection with the scheme and artifice to defraud constituted the offense of mail fraud as proscribed and prohibited by 18 U.S.C. §§ 1341 and/or 1343. Each such transportation of money or property with a value exceeding $5,000 in interstate commerce in connection with and in furtherance of the scheme and artifice to defraud, and knowing the same to have been stolen, converted or taken by fraud, constituted the offense of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. §2314.

73.     These uses of the U.S. Mails and wires, and the interstate transport of money converted or fraudulently obtained, to further the fraudulent scheme were not limited to the transactions of Named Plaintiffs, but also occurred in the transactions of each member of the Class. Each member of the Class completed a transaction in which the Defendants sold a prior daily rental vehicle without the disclosures required under Maryland law. The co-conspirators

repeated this pattern – that is, the use of the U.S. Mails and/or wires, and the interstate transport of money converted or fraudulently obtained, in furtherance of the scheme – in hundreds or thousands of similar vehicle sales transactions. These acts were related, as they had the similar purpose of concealing and affirmatively misrepresenting the prior rental history of vehicles sold to Defendants' customers, and the same methods of commission of the concealment and affirmative misrepresentation through Defendants' form documents.

74.     Defendants' enterprise, Antwerpen Automotive Group, has operated continuously for at least the past ten years, and affected thousands of borrowers' transactions through the use of form documents that intentionally contained false information. The Defendants participated and engaged in the enterprise and functioned as continuing units identifiable over a period of time and were involved in the transactions involving Named Plaintiffs and other members of the class over a period spanning at least a decade and involving thousands of transactions. The Defendants' use of the U.S. mails and wires interstate, and the interstate transport of money and property with a value exceeding $5,000 as described herein constitutes multiple instances of wire and mail fraud, multiple instances of interstate transport of money converted or fraudulently obtained, and further constitutes a pattern of racketeering activity. Nevertheless, the enterprise described above did not exist solely for the purpose of engaging in predicate acts violating RICO, but the enterprise also engaged in legitimate vehicle sales transactions over the same period of time. Among other things, the enterprise developed forms and marketing campaigns for legitimate vehicle sales transactions and enabled the distribution of income from these legitimate vehicle sales transactions to the various Defendants and their owners.

75.     If Named Plaintiffs and Class members had then suspected that Antwerpen Automotive Group was a racketeering enterprise and was being used to facilitate the fraudulent

24

scheme described herein, at the expense of Named Plaintiffs and Class members, they would have refused to conduct business with Defendants and their enterprise, would not have entered into transactions with Antwerpen Automotive Group or the Defendants, and would have sought to secure their rights under the law at that time.

76.     Named Plaintiffs' and Class members' injuries to their property were caused by Defendants' continuous operation of the enterprise and the reinvestment of illicit funds from the enterprise back into the enterprise, in that Named Plaintiffs and Class members were overcharged for their vehicles as a result of the pattern of racketeering activity described herein. Defendants would not have been able to continue their conspiracy to sell prior daily rental vehicles without disclosures required under the law through their enterprise without the reinvestment of illicit funds derived from prior sales of daily rental vehicles without proper disclosures into the enterprise.

77.     Named Plaintiffs' and Class members' injuries to their property were also caused by the pattern of racketeering activity conducted through the enterprise, in that Named Plaintiffs and Class members were overcharged for their vehicles as a result of the Defendants' fraudulent scheme which constituted a pattern of racketeering activity, and the profits obtained through the fraudulent scheme were then split between the enterprise's members according to a prior written contract or other agreement.

## VIII.  CAUSES OF ACTION

### COUNT ONE
(Implied Warranty of Merchantability)

78.     Plaintiffs re-allege and incorporate herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

79.     Auto dealers and other professional vehicle buyers in the trade need to know prior

to purchasing a vehicle at an auto auction or from any other seller whether it has been used for short-term rentals both because use for short-term rentals depresses the market value of these vehicles and because they know that under Maryland law and the law of various other states, a seller of the vehicle to a retail buyer will be legally obligated to disclose the vehicle's prior use for short-term rentals, a disclosure that will depress the vehicle's market value. To accommodate these concerns of professional vehicle buyers in the trade, auto auctions that process thousands of vehicle transactions routinely require that short-term rental cars be offered for sale through "lanes" dedicated solely for short-term rentals so that buyers clearly understand the prior use to which these vehicles have been placed; in addition, when a short-term rental vehicle is sold outside of a lane dedicated to selling such vehicles, auto auctions routinely require that sellers "announce" (i.e., disclose) their knowledge of when a vehicle has previously been used for short-term rentals. In order for a short-term rental vehicle to be acceptable within the trade, its prior use for short-term rentals must be disclosed prior to sale. Similarly, when a licensed auto dealer in Maryland sells a vehicle previously used for short-term rentals to a prospective retail buyer, Maryland law mandates that the dealer must disclose to the prospective buyer prior to sale, clearly and conspicuously, the vehicle's prior use for short-term rentals. A vehicle's prior use for short-term rentals is so significant both within the industry and to the public that the major companies who offer vehicle history reports for sale both to dealers and to the public (Carfax at www.carfax.com and Experian at www.autocheck.com) always include in their vehicle history reports whether a vehicle has been used for short-term rentals. Under both a consumer's reasonable expectations as well as trade quality standards, a vehicle with a prior rental history which is not clearly and conspicuously disclosed cannot pass without objection in the trade under the contract description and is simply not merchantable.

80.    In breach of the implied warranty of merchantability which arises under MD. CODE ANN., COMM. LAW § 2-314(2)(a), on the date Named Plaintiffs and Class members purchased their vehicles, each vehicle would not pass without objection in the trade under the contract description. The vehicles would not and did not pass without objection in the trade under the contract description because, as established by COMAR 11.12.01.14M(f) and the MVA Bulletin attached as Exhibit A, the sales agreement received by each Class member must contain a clear and conspicuous disclosure that the vehicle had previously been used as a short-term rental. In fact, however, the vehicle sales agreements provided to Named Plaintiffs and Class members do not contain any such disclosure. As a result, the short-term rentals sold to Doris Baker and the Class cannot and do not pass without objection in the trade under the contract description in violation of MD. CODE ANN., COMM. LAW §2-314(2)(a).

81.    The principal function of merchantability is to give legal effect to a buyer's reasonable expectations. Where, as here, Named Plaintiffs and the Class had a reasonable and legally protected expectation of receiving goods that would pass without objection in the trade under the contract description, their reasonable expectations were not met and Defendants breached the implied warranty of merchantability arising under MD. CODE ANN., COMM. LAW §2-314(2)(a).

82.    The Defendants reached an agreement or understanding to breach the implied warranty of merchantability in their transactions with Named Plaintiffs and the Class, and worked in combination with each other to facilitate and engage in a conspiracy to breach the implied warranty of merchantability in these transactions.

83.    As a result of Defendants' breach of, and conspiracy to breach, the implied warranty of merchantability, Named Plaintiffs and the Class sustained the losses and damages

described herein.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants, jointly and severally, for compensatory damages in an amount deemed appropriate by a jury, plus interest and costs for each Class member.

## COUNT TWO
### (Magnuson-Moss Warranty Act)

84.     Plaintiffs re-allege and incorporate herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

85.     Defendants' breach of the implied warranty of merchantability as set forth in Count One violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, including 15 U.S.C. § 2310(d).

86.     The Defendants reached an agreement or understanding to violate the Magnuson-Moss Warranty Act in their transactions with Named Plaintiffs and the Class, and worked in combination with each other to facilitate and engage in a conspiracy to violate the Magnuson-Moss Warranty Act in these transactions.

87.     As a result of Defendants' violation of the Magnuson-Moss Warranty Act, Named Plaintiffs and the Class sustained the damages and losses described herein.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants, jointly and severally, for compensatory damages in the amount deemed appropriate by a jury, plus interest, costs and reasonable counsel fees for each Class member.

## COUNT THREE
### (Maryland Consumer Protection Act)

88.     Plaintiffs re-allege and incorporate herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

89.     Defendants are each merchants within the meaning of the Maryland Consumer Protection Act (CPA), MD. CODE ANN., COMM. LAW § 13-101(g), and are subject to all of the CPA's provisions prohibiting unfair or deceptive trade practices including those in MD. CODE ANN., COMM. LAW §§ 13-301 and 13-303.

90.     Defendants' failure to disclose to, and their concealment from, Named Plaintiffs and Class members the material fact that these vehicles had been used for short-term rentals constituted unfair and deceptive trade practices in violation of the CPA, MD. CODE ANN., COMM. LAW §§ 13-301(1), (2)(i) and (iv) and (3), and 13-303. If Named Plaintiffs and Class members had known their vehicles had previously been used for short-term rentals, they would not have purchased the vehicles or would have demanded significant price concessions.

91.     On information and belief, Defendants regularly and systematically acquire vehicles for the purpose of resale which have been used as short-term rentals and retail these vehicles to the public without disclosing the prior rental use to their customers, and conspire together to do so, in violation of the CPA, in order to illegally increase their profits.

92.     Defendants' acts and omissions as aforesaid, including their failure to disclose and concealment of the material fact that its vehicles had been previously used as short-term rentals, and its affirmative misrepresentation to Named Plaintiffs and the Class that the vehicles were not used previously for a purpose other than as a consumer good, tended to and did deceive Named Plaintiffs and the members of the Class and constitutes an unfair and deceptive trade practice, in violation of MD. CODE ANN., COMM. LAW §§ 13-301(1), (2)(i) and (iv), and/or (3), and 13-303(1) - (3).

93.     As a result of Defendants' unfair and deceptive trade practices, Named Plaintiffs and the Class agreed to and did purchase their vehicles, Named Plaintiffs and the Class paid

Defendants significantly more for their vehicles than they were worth, and Named Plaintiffs and the Class sustained other damages and losses described herein.

94.     Violating the Magnuson-Moss Act in a transaction involving the sale of a motor vehicle, as set forth in Count Two of this Complaint, is a *per se* violation of the Maryland Consumer Protection Act.

95.     The Defendants, all associating under the Antwerpen Automotive umbrella, reached an agreement or understanding to violate the Maryland Consumer Protection Act in their transactions with Named Plaintiffs and the Class, and worked in combination with each other to facilitate and engage in a conspiracy to violate the Maryland Consumer Protection Act.

96.     The Defendants' failure to comply with the provisions of the various acts governing the Named Plaintiffs and the Class members they represent, and their conspiracy to do so, were deceptive and unfair acts within the meaning of the Maryland Consumer Protection Act. Defendants engaged in the suppression and omission of material facts and affirmative misrepresentations, identified herein, that had the capacity, tendency or effect of deceiving or misleading Doris Baker, William and Leslie Flanigan, and members of the Class, and that did in fact deceive or mislead Plaintiff and members of the Class, causing Named Plaintiffs and members of the Class injury and loss.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants, jointly and severally, for compensatory damages in the amount a jury deems appropriate, a preliminary and permanent injunction prohibiting Defendants from selling short-term rentals without proper disclosure to consumers, reasonable counsel fees, plus interest and costs, and request such other and further relief as the Court deems proper for each Class member.

### COUNT FOUR
### (Deceit By Non-Disclosure or Concealment)

97.     Plaintiffs re-allege and incorporate herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

98.     On information and belief, Named Plaintiffs aver that Defendants regularly acquire vehicles for the purpose of resale which have been used as short-term rentals and regularly and intentionally retail these vehicles to the public without disclosing this prior use to its customers, in violation of Maryland law, in order to increase their profits. The transactions entered into by the Named Plaintiffs with Antwepen Automotive are just a small but representative sample of Defendants' systematic fraud on the public, and their conspiracy to commit fraud.

99.     Defendants have a duty to disclose the prior use of vehicles employed as short-term rentals, but Defendants intentionally and systematically concealed from Named Plaintiffs and other members of the Class this fact which they had a duty to disclose. Indeed, due to the requirements of Maryland law that any prior short-term rental history must be disclosed clearly and conspicuously on a vehicle sales contract, the Defendants' failure to make such a disclosure constituted an affirmative misrepresentation by Defendants of the vehicle's history on vehicle sales agreements of the Named Plaintiffs and the Class, made by the Defendant who sold the vehicle to Named Plaintiffs or a Class Member at the time of the consummation of each transaction.

100.    Through their affirmative misrepresentations and concealments, Defendants intended to induce Named Plaintiffs and the Class to act differently than they would have acted had they known the true facts.

101.    Because of Defendants' affirmative misrepresentations concerning, and concealments of, the aforesaid material facts, Named Plaintiffs and the Class acted in a manner

different from how they would have acted had Named Plaintiffs and the Class known that their vehicles had been used for short-term rentals. Had Named Plaintiffs and the Class known their vehicles had been previously used for short-term rentals, they would not have purchased the vehicles or would have demanded significant price concessions.

102.    The Defendants reached an agreement or understanding to knowingly and willfully cheat and defraud Named Plaintiffs and the Class, to engage in the scheme and artifice to defraud Named Plaintiffs and the Class through their intentional concealment of the fact that the vehicles sold to Named Plaintiffs and the Class had been used for short-term rentals, and worked in combination with each other to facilitate and engage in a conspiracy to deceive and defraud.

103.    As a result of Defendants' affirmative misrepresentations concerning, and concealment of, the aforesaid material facts, Named Plaintiffs and the Class suffered the losses and damages set forth above.

104.    Defendants' sale of vehicles to Named Plaintiffs and the Class, and conspiracy to sell those vehicles without disclosure of their prior use as short-term rentals, was motivated by Defendants' actual malice toward Plaintiffs and the Class. Defendants intended to and did injure Named Plaintiffs and the Class by tricking them into purchasing their vehicles and paying significantly more for their vehicles than they would have been worth had Defendants complied with Maryland law by disclosing the vehicles' prior use as short-term rentals.

105.    Named Plaintiffs and the Class aver that unless and until a jury awards significant punitive damages against Defendants, Defendants will continue to violate Maryland's disclosure laws as part of their ongoing scheme to obtain profits illegally at the retail public's expense.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants, jointly and

severally, for compensatory damages and punitive damages in such amount as a jury deems necessary to punish and deter Defendants, and for interest, costs and reasonable attorney's fees.

## COUNT FIVE
### (Money Had and Received/Unjust Enrichment)

106.     Plaintiffs re-allege and incorporate herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

107.     As set forth above, Defendants assessed and collected payments for vehicles that had been used as short-term rentals in amounts that exceeded the value of these vehicles, which conferred a substantial benefit on each of Defendants.

108.     Defendants reached an agreement or understanding to assess and collect payments for vehicles that had been used as short-term rentals in amounts that exceeded the value of those vehicles, and worked in combination with each other to engage in a conspiracy to do so.  Upon information and belief, payments by Named Plaintiffs and the Class to one Defendant actually resulted in monetary benefits to all of the Defendants resulting from their conspiracy and association as Antwerpen Automotive.

109.     Defendants were aware of, and had knowledge of, the substantial benefits conferred by Named Plaintiffs and other members of the Class on Defendants by paying amounts that exceeded the value of the vehicles sold to Named Plaintiffs and the Class.

110.     Defendants have come into the possession of money in the form of payments that they had, and have no right to at law or in equity.

111.     It would be inequitable for Defendants to retain any such monies that they had no legal right to charge or collect.

112.     As a consequence, the Named Plaintiffs and other members of the Class have been damaged.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants, jointly and severally, for damages sustained including pre-judgment interest, expenses for this suit, reasonable attorney's fees, and such other and further relief as the case may require, equitable and/or injunctive relief, including restitution, for each Class member.

## COUNT SIX
### (Negligent Misrepresentation)

113.   Plaintiffs re-allege and incorporate herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below, except to the extent they allege intentional and malicious conduct by Defendants.  In this Count, Plaintiffs plead in the alternative as permitted by Maryland law.

114.   Plaintiffs aver that Defendants' agents or employees had a duty to disclose to Named Plaintiffs and the Class when a vehicle had previously been used for short-term rentals, but they negligently omitted and failed to disclose the material fact that the vehicles sold to Named Plaintiffs and the other members of the Class had previously been used as short-term rental vehicles, and negligently omitted and failed to disclose that their vehicles would not pass without objection in the trade under the contract description.

115.   Defendants' agents or employees negligently failed to disclose that the prices of the vehicles sold to Named Plaintiffs and the other members of the Class did not accurately reflect their value, knowing that Named Plaintiffs and the other members of the Class would reasonably rely upon the false and misleading representations and omissions to their detriment, which they did.

116.   As a direct and proximate result of Defendants' negligent statements, representations, and omissions, Named Plaintiffs and the other members of the Class were induced, *ab initio*, to enter into sales agreements for vehicles with Defendants for a price

significantly higher than the vehicles were worth.

117.   Defendants, their agents or employees, owed a duty of care to Named Plaintiffs and the other members of the Class.

118.   Defendants recklessly and negligently breached the duty of care they owed to Doris Baker, William and Leslie Flanigan and the other members of the Class by making negligent representations to Named Plaintiffs and the other members of the Class and negligently concealing material facts, as set forth herein.

119.   Defendants knew, or had reason to know, that Named Plaintiffs and the other members of the Class would reasonably rely on the representations and concealments which if erroneous, would cause loss, injury or damage.

120.   Named Plaintiffs and the other members of the Class justifiably and reasonably took actions to their detriment as alleged herein, by paying Defendants significantly more for their vehicles than they were worth, in reliance on the negligent representations and concealments.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants, jointly and severally, for damages, punitive damages to be determined by the jury and such other and further relief as the Court may deem just and proper, for each Class member.

## COUNT SEVEN
### (Violation of RICO – 18 U.S.C. § 1962(a))

121.   Plaintiffs re-allege and incorporate by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

122.   Plaintiff and each Class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

123.   Each Defendant and conspirator is a "person" within the meaning of 18 U.S.C. §§

1961(3) and 18 U.S.C. 1962(a).

124.    Defendants formed an association-in-fact with each other, Antwerpen Automotive Group, which constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which enterprise was engaged in, and the activities of which affect, interstate commerce.

125.    Each of the conspirators used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to acquire an interest in, establish, and operate the enterprise.

126.    These unlawful activities included multiple instances of mail and wire fraud, including but not limited to the mail and wire fraud described in part VII above, and bank wired monies in violation of 18 U.S.C. §§ 1341 and 1343, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants to maintain and operate it.

127.    These unlawful activities also included multiple instances of interstate transport of money converted or fraudulently obtained, including but not limited to the interstate transport of money converted or fraudulently obtained described in part VII above, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants to maintain and operate it.

128.    The purpose of the enterprise created by the Defendants was to pool resources and expertise to acquire, advertise and sell motor vehicles used for short-term rentals, including allowing the Defendants to establish a methodology and scheme for selling prior daily rental vehicles without disclosures required by Maryland law in a uniform way, using form documents developed for use by Antwerpen Automotive Group association in fact enterprise, and to profit from this scheme at the expense of the buyer.

129.    The association-in-fact had a common or shared purpose, that is to give effect to the prior daily rental sale scheme described herein and to allow the Defendants to use form documents and process to conduct their vehicle sales transactions, and had a distinct division of labor. It has continued as a unit, with a core membership, over a substantial period of time, exceeding 10 years, and is an ongoing organization established for an economic motive. Although the membership in the enterprise has changed, and some of the Defendants were added into the enterprise over time, the structure of the organization and the functions undertaken by its members have remained constant. The association-in-fact remained viable and active at the time this action was filed.

130.    Defendants each played a substantial and distinct role in the scheme.

131.    In this association-in-fact, each Defendant car dealership agreed to advertise themselves as one of an affiliated group of companies operating under the banner "Antwerpen Automotive Group." The Defendant car dealerships agreed that they would subject themselves to oversight by a group of persons identified to the public as officers and executives of "Antwerpen Automotive Group," although no such company exists. Upon information and belief, the Defendant car dealers also agreed to each contribute to the compensation packages for these so-called officers and executives of "Antwerpen Automotive Group." Upon information and belief, the Defendant car dealers also agreed that their sales practices and marketing campaigns would be governed by general guidelines developed through their "Antwerpen Automotive Group" association. Antwerpen Automotive Group, however, is not a legal entity or a registered trade name. The Defendant car dealership entities worked together and agreed upon form documents and procedures to use for all of their dealerships, including but not limited to the creation of documents such as purported "prior use disclosure" forms which did not comport

with Maryland law, and which were utilized to mislead consumers about the prior history of their vehicles. The Defendants also agreed on a procedure for selling prior rental vehicles without the disclosures required under Maryland law, even when utilizing form documents which did contain areas to disclose the prior rental history of the vehicles they sold.

132.   Each member of the Class received form documents that contained fraudulent and false statements and/or omissions and which concealed material facts that caused Named Plaintiffs and members of the Class to act in reasonable reliance on these deceptive documents that Antwerpen Automotive Group was proceeding legitimately, and that the vehicles sold to them had no daily rental history.

133.   All of these activities of the association-in-fact form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to the Named Plaintiffs and each Class member. Defendants' illegal activities persisted over an extended period of time. Each document provided to Named Plaintiffs and the other members of the Class in the course of their vehicle sales transactions was provided in furtherance of the conspiracy described herein for which the Defendants are liable. The reliance of the Named Plaintiffs and members of the Class on the material omissions in the documents and the falsehoods contained in such documents and other communications was reasonable and justified because such documents and communications would and did cause persons of ordinary experience to be convinced of the legality and legitimacy of the operations of Antwerpen Automotive Group.

134.   These activities of the Defendants entailed multiple instances of mail fraud consisting of intentional mail fraud intended to induce, and inducing, Named Plaintiffs and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1341.

135.   These activities of the Defendants also entailed multiple instances of wire fraud

consisting of intentional wire fraud intended to induce, and inducing, Named Plaintiffs and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1343.

136.   These activities of the Defendants also entailed multiple instances of interstate transport of money converted or fraudulently obtained, in violation of 18 U.S.C. §2314.

137.   Through the use of this illegal and fraudulent scheme, and through its efforts to operate and maintain the enterprise described herein, to maintain the conspiracy and to facilitate the sale of prior daily rental vehicles without the disclosures required under Maryland law, the Defendants through their conspiracy have been able to retain money which is rightfully payable to Named Plaintiffs and Class members, and to collect money not properly due from Named Plaintiffs or Class members.

138.   The Defendants through their conspiracy retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a). Furthermore, the co-conspirators each previously acquired illicit funds through similar fraudulent operations involving mail and wire fraud and interstate transport of money converted or fraudulently obtained, and used said proceeds to continue their scheme by investing in and operating Antwerpen Automotive Group.

139.   Through the use of the illegal and fraudulent scheme for selling prior daily rental vehicles without the disclosures required under Maryland law, and through their efforts to operate and maintain the enterprise described herein and to maintain the conspiracy to facilitate the sale of prior daily rental vehicles without the disclosures required under Maryland law, the Defendants through their conspiracy have been able both to maintain the enterprise, and to profit from it at the expense of Named Plaintiffs and the Class.

140.   Plaintiffs and all Class members have been injured in their property by reason of

the violations of §1962(a) because Plaintiffs and all Class members were overcharged for their purchases from Defendants as a result of the reinvestment and use of funds by Defendants derived from the Defendants' pattern of racketeering activity to fund and operate Antwerpen Automotive Group, and to facilitate and incentivize the Defendants' conspiracy to sell, and their actions in selling, prior rental vehicles without the disclosures required under Maryland law.

WHEREFORE, Plaintiffs pray that the Court:

A.      Pursuant to RICO, award Plaintiffs and the Class members an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all other amounts or damages allowed to be recovered by RICO;

B.      Certify this case as a Plaintiff Class action pursuant to Maryland Rule 2-231(b)(1), (2) and/or (3);

C.      Declare that Antwerpen Automotive Group is a racketeering enterprise and that the fraudulent scheme set forth in this Complaint constitutes a pattern of racketeering activity;

D.      Permanently enjoin and restrain the Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior daily rental vehicles without the clear and conspicuous disclosures required by Maryland law;

E.      Award pre-judgment interest;

F.      Award reasonable costs and attorneys' fees; and

G.      Award such other and further relief as the Court deems just and proper.

## COUNT NINE
### (Violation of RICO - 18 U.S.C. § 1962(c))

141.    Plaintiffs re-allege and incorporate by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

142.    Each Plaintiff and each Class member is a "person" within the meaning of 18

U.S.C. §§ 1961(3) and 1964(c).

143.    The Defendants and co-conspirators are each "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

144.    The Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

145.    Defendants were each associated with the enterprise and participated in its management and operation by directing its affairs and by conducting business with each other and assisting in the fraudulent scheme described herein, to acquire and sell prior daily rental vehicles without the disclosures required under Maryland law. The Defendants each participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(i)(b), 1961(5) and 1962(c), to wit:

(a)    Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341;

(b)    Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

(c)    Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

146.    Each Class member suffered injury to his or her property, within the meaning of 18 U.S.C. § 1964(c), by reason of the Defendants' violations of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiffs pray that the Court:

A.    Pursuant to RICO, award Plaintiffs and the Class members an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all other amounts or damages allowed to be recovered by RICO;

B.    Certify this case as a Plaintiff Class action pursuant to Maryland Rule 2-

41

231(b)(1), (2) and/or (3);

C.    Declare that Antwerpen Automotive Group is a racketeering enterprise and that the fraudulent scheme set forth in this Complaint constitutes a pattern of racketeering activity;

D.    Permanently enjoin and restrain the Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior daily rental vehicles without the clear and conspicuous disclosures required by Maryland law;

E.    Award pre-judgment interest;

F.    Award reasonable costs and attorneys' fees; and

G.    Award such other and further relief as the Court deems just and proper.

## COUNT TEN
### (Violation of RICO - 18 U.S.C. § 1962(d))

147.   Plaintiffs re-allege and incorporate by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

148.   Plaintiffs and each Class member are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

149.   The Defendants and co-conspirators are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

150.   Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

151.   The Defendants as co-conspirators were associated with the enterprise described herein, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a) and (c).

152.   The Defendants each knew of the RICO violations of the enterprise and agreed to facilitate those activities.

153.   The Defendants as co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to acquire an interest in, establish and operate the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. §2314.

154.   The Defendants as co-conspirators conspired to operate, maintain control of, and maintain an interest in the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. §2314.

155.   The Named Plaintiffs and each Class member have suffered injury to his or her property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of overt acts constituting illegal activity in violation of 18 U.S.C. §§ 1961(1) and 1962(d).

WHEREFORE, Plaintiffs pray that the Court:

A.   Pursuant to RICO, award Plaintiffs and the Class members an amount equal to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any and all other amounts or damages allowed to be recovered by RICO;

B.   Certify this case as a Plaintiff Class action pursuant to Maryland Rule 2-231(b)(1), (2) and/or (3);

C.   Declare that Antwerpen Automotive Group is a racketeering enterprise and that the fraudulent scheme set forth in this Complaint constitutes a pattern of racketeering activity;

D.   Permanently enjoin and restrain the Defendants and their agents, employees,

representatives and all persons acting on their behalf from selling prior daily rental vehicles without the clear and conspicuous disclosures required by Maryland law;

    E.      Award pre-judgment interest;

    F.      Award reasonable costs and attorneys' fees; and

    G.      Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

QUINN, GORDON & WOLF, CHTD.

Dated:  July 16, 2010

Richard S. Gordon
Benjamin H. Carney
102 W. Pennsylvania Ave., Suite 402
Towson, Maryland 21204
(410)825-2300

Mark H. Steinbach
O'Toole, Rothwell, Nassau & Steinbach
1350 Connecticut Avenue, N.W, Suite 200
Washington, D.C. 20006
(202) 775-1550

**Attorneys for Plaintiffs and the Class**

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Richard S. Gordon

## RULE 1-313 CERTIFICATION

I certify that I am admitted to practice law in the state of Maryland.

Mark H. Steinbach