IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CHARLENE BAKER, *et al.*,

    Plaintiffs,

        v.                          CIVIL NO.: WDQ-10-2342

ANTWERPEN MOTORCARS LTD.,
*et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Charlene Baker[1] and William and Leslie Flanigan (the "plaintiffs") sued Antwerpen Motorcars Ltd. and related entities (the "Antwerpen Automotive Group")[2] for various state and federal claims based on the failure to disclose that cars sold to them had been used as short-term rentals. For the following reasons, the Antwerpen Automotive Group's motion to compel arbitration will be denied.

---

[1] Baker sued as the personal representative of the estate of Doris Baker. Compl. ¶ 13.

[2] Antbren LLC; Antrand, Inc.; Antwerpen Chevrolet Ltd.; Antwerpen-HK, Inc.; Antwerpen Hyundai, Inc.; Antwerpen Nissan, Inc.; Antwerpen on the Wye, LLC; Antwerpen Volkswagen, Inc.; and J.A. Motorcars, Inc. Compl. ¶ 1. The plaintiffs allege that these businesses are "jointly owned, share management personnel[,] and hold themselves out to the general public under the name Antwerpen Automotive Group." *Id.* ¶ 12.

I.  Background

On February 3, 2007, Doris Baker ("Doris") bought a used 2005 Ford Focus from Antwerpen Nissan, a Maryland dealership. Compl. ¶¶ 13, 20. Doris was not told that the car had been used for short-term rentals. *Id.* ¶ 13.

The price of the car was $11,340. Compl., Ex. B [hereinafter Baker Buyer's Order] at 1. Doris paid a $500 deposit. *Id.* That day, she signed a Buyer's Order, which provides that "[the] Buyer . . . and Dealer agree that if any claim or dispute arises, the dispute will be resolved by binding arbitration." *Id.* at 2.[3]

Around the time that she signed the Buyer's Order, Doris signed a Retail Installment Sales Contract ("RISC") with Antwerpen Nissan to finance the remaining $10,840. ECF No. 11, Ex. 3 [hereinafter Baker RISC] at 1; *see* Baker Decl. ¶ 2.[4] The RISC, which did not contain an arbitration clause, provides the annual percentage rate, finance charge, principal, and other payment terms. Baker RISC 2.

---

[3] The Buyer's Order also provides: "The front and back of the Order comprise the entire agreement affecting this purchase. . . . The [Buyer] before or at the time of delivery of the [car] will execute such other forms of agreement or documents as may be required[.]" Baker Buyer's Order 1-2.

[4] The RISC is governed by the Creditor Grantor Closed End Credit Provisions (the "CLEC"), Md. Code Ann., Com. Law §§ 12-1001 *et seq.* Baker RISC 5.

2

Maryland dealerships must "clearly and conspicuously" identify cars formerly used as short-term rentals. Md. Code Regs. 11.12.01.14M(1).[5] This disclosure must be in writing. Galuska Aff. ¶ 4.[6] Neither the Buyer's Order nor the RISC indicates that Doris's car had been used as a short-term rental.

On April 13, 2007, William and Leslie Flanigan bought a used 2005 Toyota Avalon from Antwerpen Toyota, a Maryland dealership. *See* Compl. ¶ 14. This car had also been used as a short-term rental, which the Flanigans were not told. *Id.* The price of the car was $26,844.95, and they paid a $10,000 deposit. Compl., Ex. C [hereinafter Flanigan Buyer's Order] at 1. That day, the Flanigans entered into a Buyer's Order, which provides that any dispute between the "Buyer [and] Dealer . . . will be resolved by binding arbitration." *Id.* at 2.[7]

Also that day, the Flanigans executed a RISC with Antwerpen Toyota to finance the $16,844.95 principal balance. ECF No. 11,

---

[5] The plaintiffs assert that buyers seek to avoid short-term rentals because those cars are "often driven hard by drivers who care little about them, may not have been well-maintained[,] and are more often involved in accidents than vehicles used for personal" use. Compl. ¶ 3.

[6] Stephen A. Galuska is the Maryland Motor Vehicle Administration's Assistant Manager of Business Licensing and Consumer Services. Galuska Aff. ¶ 2.

[7] The Buyer's Order also provides that it and "other documents signed by [the Buyer] in connection with this Order comprise the entire agreement . . . affecting this purchase." Flanigan Buyer's Order 1.

Ex. 4 [hereinafter Flanigan RISC] at 1.[8] Like the Baker RISC, this RISC provides the interest rate, principal, and various financing terms. *Id.* at 1. It does not have an arbitration clause. The Flanigans' Buyer's Order and RISC fail to disclose that the car had been used as a short-term rental.

On November 9, 2009, Doris died. Compl. ¶ 13. Baker, Doris's daughter, is her estate's personal representative. *Id.*; Baker Decl. ¶ 2.

Sometime in or before 2010, the plaintiffs discovered that their cars had been used as short-term rentals. *See* Compl. ¶ 3.

On July 16, 2010, the plaintiffs filed a class action complaint in the Circuit Court for Baltimore County against the Antwerpen Automotive Group for systematically failing to disclose the rental history of cars on "vehicle sales agreements and other form documents." Compl. ¶¶ 1, 11, 26. The plaintiffs sued under the Magnuson-Moss Warranty Act,[9] the Maryland Consumer Protection Act,[10] the Racketeer Influenced and Corrupt Organizations Act,[11] and for breach of the implied warranty of merchantability, deceit by non-disclosure or concealment, unjust

---

[8] The RISC is governed by the CLEC. Flanigan RISC 4.

[9] 15 U.S.C. §§ 2301 *et seq.*

[10] Md. Code Ann., Com. Law §§ 13-101 *et seq.*

[11] 18 U.S.C. §§ 1961 *et seq.*

enrichment, and negligent misrepresentation. Compl. ¶¶ 78-155.

On August 24, 2010, the case was removed to this Court on the basis of federal question jurisdiction. ECF No. 1. On September 23, 2010, the Antwerpen Automotive Group moved to compel arbitration. ECF No. 8. On October 26, 2010, the plaintiffs opposed that motion. ECF No. 11. On November 22, 2010, the Antwerpen Automotive Group filed its reply. ECF No. 15.

II. Analysis

A. Standard of Review

A court may compel arbitration under the Federal Arbitration Act (the "FAA")[12] if the parties agreed in writing to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). A party can be "forced" to arbitrate only those issues it has expressly agreed to submit to arbitration. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). Whether an arbitration agreement exists depends on "state-law principles that govern the formation of contracts." *Id.* at 944. Maryland law applies to this case.[13]

---

[12] The FAA applies because the Court has federal question jurisdiction. *See* 9 U.S.C. § 4; *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 439 (4th Cir. 1999).

[13] In a federal question case that incorporates a state law issue, such as contract formation, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise. *See Johnson v. Carmax, Inc.*, No. 3:10-CV-213, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010) (*citing In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir.

5

B. The Antwerpen Automotive Group's Motion to Compel Arbitration

The Antwerpen Automotive Group moved to compel the plaintiffs to file individual arbitration actions based on the arbitration clauses in the Buyer's Orders. ECF No. 8 at 1, 3-4. It asserts that a Buyer's Order and a RISC should be construed as one agreement. ECF No. 15 at 4.[14]

The plaintiffs argue that the RISCs, which do not contain arbitration clauses, are the operative agreements between the parties. ECF No. 11 at 6. They assert that under Maryland law, only a RISC governs a car sale. *Id.*

Maryland's Department of Transportation Regulations provide that "[e]very vehicle sales contract or agreement shall be evi-

---

1988)). Maryland follows the *lex loci contractus* rule, under which "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988). For choice-of-law purposes, "a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002). Generally, that last act is a party's signature. *See, e.g., Solid Concepts, LLC v. Fallen Soldiers, Inc.*, No. DKC-09-2377, 2010 WL 3123269, at *1 n.1 (D. Md. Aug. 9, 2010) (interpreting Maryland law). The Buyer's Orders and RISCs were signed in Maryland. *See* Compl. ¶¶ 13-14, 20; Flanigan RISC 1. No compelling federal interest prevents the application of Maryland law. *See Johnson*, 2010 WL 2802478, at *2. The parties agree that Maryland law governs. *See* ECF No. 8 at 5; ECF No. 11 at 1.

[14] *See* Baker Buyer's Order 2 ("The [Buyer] before or at the time of delivery of the [car] will execute such other forms of agreement or documents as may be required[.]"); Flanigan Buyer's Order 1 ("[This] Buyer's Order, along with other documents signed by [the Buyer] in connection with this Order, comprise the entire agreement . . . affecting this purchase.").

denced by an instrument in writing containing all of the agreements of the parties." Md. Code Regs. [hereinafter Regulation] 11.12.01.15. The RISCS are "vehicle sales contracts." Under the Transportation Article of the Maryland Code, a "contract for the sale of a vehicle by a dealer" must include the "principal amount charged for the vehicle" and "[a]ny interest." Md. Code Ann., Transp. § 15-311(a)(1)-(2). Only the RISCs contain the principal, interest, and finance charges.[15]

The Maryland Retail Installment Sales Act is nearly identical to Regulation 11.12.01.15: "An installment sale agreement shall be evidenced by an instrument in writing which contains all of the agreements of the parties." Md. Code Ann., Com. Law § 12-604. In enacting the Retail Installment Sales Act, the Maryland legislature "intended to protect ignorant and unwary buyers from oppressive business practices that were becoming more apparent with the rising quantity of consumer credit." *Associated Acceptance Corp. v. Bailey*, 226 Md. 550, 555, 174 A.2d 440, 443 (1961). The Retail Installment Sales Act has been interpreted to mean that a car sale is governed only by a RISC, presumably because

---

[15] *See* Baker RISC 1; Flanigan RISC 1; *see also Lambert v. Nat'l Motors, Inc.*, No. WMN-10-3522, 2011 WL 1704726, at *2 (D. Md. May 4, 2011) (characterizing a RISC as a vehicle sales contract under Regulation 11.12.01.15).

the application of multiple documents would mean that no single instrument would contain all of the parties' agreements.[16]

Although the Retail Installment Sales Act does not apply to the Baker and Flanigan RISCs,[17] that statute's legislative intent and similar language are instructive when interpreting Regulation 11.12.01.15. *See Lambert*, 2011 WL 1704726, at *2 n.1. Thus, the "agreements [in the RISCs] are the only agreements that apply to the transaction, and the arbitration clause [in the Buyer's Orders] is not one of them."[18] The

---

[16] *See Tokarski v. Castle Auto Outlet, LLC*, No. RDB-09-0509, ECF No. 27 at 2-3 (D. Md. Sept. 25, 2009) (denying motion to compel arbitration based on a Buyer's Order with an arbitration provision; the RISC, which lacked an arbitration clause, "superseded" the Buyer's Order under the Retail Installment Sales Act); *Ricks v. Wilson Powell Lincoln-Mercury, Inc.*, No. CAL-10-23033, slip op. at 1-3 (Cir. Ct. P.G. Cnty. Mar. 22, 2011) (declining to compel arbitration under a Buyer's Order arbitration provision; once the accompanying RISC--which did not include an arbitration clause--was executed, it "govern[ed] the parties' agreement" under the Retail Installment Sales Act). There appear to be only unpublished cases--inaccessible from commercial databases--that discuss the effect of the Retail Installment Sales Act on the relationship between a Buyer's Order and a RISC.

[17] The RISCs are governed by the CLEC. Baker RISC 5; Flanigan RISC 4.

[18] *Lambert*, 2011 WL 1704726, at *2 & n.1 (relying on the Retail Installment Sales Act to interpret Regulation 11.12.01.15 and refusing to compel arbitration of a dispute in which the plaintiff sued a dealership for failing to disclose that her car was a former rental; only the Buyer's Order, not the RISC, contained an arbitration clause, and the RISC "superseded" the Buyer's Order under Regulation 11.12.01.15). *Lambert* is the only identified and/or accessible case to interpret Regulation 11.12.01.15.

Antwerpen Automotive Group's motion to compel arbitration will be denied.[19]

III. Conclusion

For the reasons stated above, the Antwerpen Automotive Group's motion to compel arbitration will be denied.

_8/22/11_
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge

---

[19] It should be noted that although each Buyer's Order may address the RISC, the Buyer's Orders were superseded by the RISCs under Regulation 11.12.01.15. See Baker Buyer's Order 2; Flanigan Buyer's Order 1; supra p. 6 n.14; Lambert, 2011 WL 1704726, at *2 (RISC superseded the Buyer's Order under Regulation 11.12.01.15); cf. Tokarski, No. RDB-09-509, ECF No. 27 at 2 (RISC superseded the Buyer's Order under the Retail Installment Sales Act).

It should also be noted that on May 26, 2011, the Court decided Rota-McLarty v. Santander Consumer USA, Inc., in which the plaintiff sued a car dealership's assignee for various state law claims based on hidden finance charges and improper repossession procedures. No. WDQ-10-0908, 2011 WL 2133698, at *1 (D. Md. May 26, 2011). The plaintiff had signed a Buyer's Order with an arbitration clause. Id. at *1. She had also executed a RISC--governed by the CLEC and not by the Retail Installment Sales Act--that did not contain an arbitration provision. Id. at *1-*2; WDQ-10-0908, ECF No. 23, Ex. C. The defendant moved to compel arbitration based on the Buyer's Order. Rota-McLarty, 2011 WL 2133698, at *3. The parties never raised Regulation 11.12.01.15 or the Retail Installment Sales Act. See WDQ-10-0908, ECF Nos. 23-25. Thus, the relationship between the Buyer's Order and the RISC was discussed under general Maryland contract law. See Rota-McLarty, 2011 WL 2133698, at *4 (explaining that "[w]hen multiple agreements are made part of a single transaction, they will be interpreted together" (citing Shoreham Developers, Inc. v. Randolph Hills, Inc., 248 Md. 267, 271-72, 235 A.2d 735, 739 (1967))). Although the Court noted that "the totality of circumstances indicates that the [RISC and the Buyer's Order] were meant to be read and construed together," the Court held that the defendant had waived arbitration. Id. at *4, *6. Thus, the discussion of the relationship between the Buyer's Order and the RISC was merely dicta.